### 43536. MARBURY v. MARBURY.
(352 SE2d 564)

CLARKE, Presiding Justice.

Mrs. Marbury was granted a divorce by the Superior Court of Muscogee County. The court awarded custody, alimony and child

support to her. Mr. Marbury, a resident of Connecticut, was served by publication pursuant to OCGA § 9-11-4 (e). Jurisdiction over him was based on OCGA § 9-10-91 (5), the domestic relations long arm statute enacted in 1983. Mr. Marbury sought to have the judgment set aside because of lack of personal jurisdiction and inadequate service. The court denied his motion, and we reverse.

We granted this application to answer two questions: first, did Mr. Marbury have sufficient contacts with this state for the exercise of jurisdiction by the Georgia court? Secondly, was service by publication followed by the clerk's sending a copy of the summons by regular mail sufficient to notify him of the pendency of this lawsuit?

The verified complaint alleges that the parties were married March 21, 1970, at Fort Benning, Georgia. They left Georgia in August 1971 and lived in various places. In 1974 they moved to Nashville, Tennessee and lived there until about December 27, 1977, when they separated. Mrs. Marbury returned to Georgia and later filed for divorce in Muscogee County. On October 16, 1985, the Superior Court of Muscogee County ordered Mr. Marbury served by publication, finding that he had been a resident of Georgia prior to the commencement of the action. On October 16, 1985, the clerk sent a copy of the order, notice and the complaint to Mr. Marbury by regular mail at his last known address. The final judgment of divorce was granted January 24, 1986. In his motion to set aside the judgment made pursuant to OCGA § 9-11-60 (d) on the basis of lack of personal jurisdiction, Mr. Marbury stated that he had not resided in Georgia for fourteen years and had only visited his children in Georgia on five occasions in that time. In response to a request for admissions he admitted that he received a copy of the summons and complaint.

1. A crucial question to be answered is whether Mr. Marbury was properly served. We found in *Lee v. Pace*, 252 Ga. 546 (315 SE2d 417) (1984), that service by publication coupled with a mailing of a copy of the complaint and notice is adequate service under OCGA § 9-10-94 for a non-resident subject to the jurisdiction of this state under the long arm statute. Long arm service is permitted pursuant to OCGA § 9-11-4 (e) (1) because § 9-11-4 (i), which concerns alternative service, provides that the methods of service in the code section are cumulative with other methods in other statutes. OCGA § 9-11-4 (i) provides in the last sentence, "In all cases or special proceedings where the requirements or procedures for service, or both, are not prescribed by law and in any situation where the provisions therefor are not clear or certain, the court may prescribe service according to the exigencies of each case, consistent with the constitution." In *Lee v. Pace* the complaint and notice were mailed by certified mail. The statute under which service was made, OCGA § 9-11-4 (e) (1) (C), provides only that the clerk shall mail a copy of the complaint and notice to the last

known address of the non-resident defendant. In order for service by publication on a non-resident defendant over whom personal jurisdiction is sought under the long arm statute to be consistent with the Constitution where personal service is possible, actual notice is required unless expressly or impliedly waived. The burden is on the plaintiff to show that actual notice was received in any case where personal service is possible. In all other cases the requirement of due diligence should be rigidly adhered to. Use of certified mail would provide the plaintiff with greater assurance of actual notice than would regular mail, but in this case the objective was accomplished because notice was admitted.

2. The most important question which we will address is whether there were sufficient contacts with the state for Georgia courts to have personal jurisdiction over Mr. Marbury under Georgia's long arm statute, OCGA § 9-10-91. We considered the constitutionality of the statute in *Smith v. Smith*, 254 Ga. 450 (330 SE2d 706) (1985), and found that in that case there were sufficient contacts with Georgia to justify an in personam judgment against the non-resident defendant. Where the defendant had availed himself of the privilege of maintaining a marital domicile in Georgia and of using Georgia courts to dissolve the marriage and of choosing to remain in Georgia for some time after the dissolution of the marriage, his being subjected to the jurisdiction of Georgia courts does not offend " 'traditional notions of fair play and substantial justice.' " *Intl. Shoe Co. v. Washington*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95) (1945). We also found that this defendant could "reasonably anticipate being haled into court" in this state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 62 LE2d 490) (1980).

The facts in this case are somewhat different. Here, the only contact between Mr. Marbury and the state after his marriage occurred during the period between March 1970 and August 1971, when Georgia was the marital domicile of the couple, plus several short visits after Mrs. Marbury moved back to the state. There is no indication that any of the events which led to the dissolution of the marriage occurred in Georgia. The last domicile of the parties before their separation was Nashville, Tennessee, where they had been living for several years prior to the separation.

In *Kulko v. California Superior Court*, 436 U. S. 84 (98 SC 1690, 56 LE2d 132) (1978), the United States Supreme Court reversed a decision of the California Supreme Court upholding two lower court's decisions that personal jurisdiction over a non-resident defendant existed under the California long arm statute. The jurisdiction over the non-resident defendant husband was asserted on the basis that he had availed himself of the benefits and protection of California law by sending his daughter to live with her mother in California. The par-

ties had married in California during a three-day layover as husband was being shipped overseas for military duty. Wife returned to New York where husband joined her after his military tour of duty was completed, having a twenty-four-hour layover in California en route. Two children were born in New York, and the parties continued to live there until they separated and wife moved to California. The parties drew up a separation agreement in New York and wife obtained a divorce in Haiti. Wife then returned to California and was joined there by her daughter with husband's consent. Later the son also joined wife without husband's consent. She sued in California for a change of custody and increased child support. The California court ruled in favor of wife. Reversing, the United States Supreme Court noted that if the California court had relied on the visits to California or the fact that the marriage had taken place in California between two New York residents the result would have made a mockery of due process. Also the Court noted that the California court did not base jurisdiction on the residence of mother in California. Rather, it was the fact that husband had allowed his daughter to go to California to be with her mother which caused the lower court to find the "purposeful act" which conferred personal jurisdiction upon the California court. The Court concluded that the single act of allowing his daughter to move to California to be with her mother ". . . is surely not one that a·reasonable parent would expect to result in the substantial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have anticipated being 'haled before a [California] court,' *Shaffer v. Heitner*, 433 U. S. at 216." *Kulko v. California Superior Court*, supra.

Under the reasoning of *Kulko*, supra, we find insufficient contacts with the state for Mr. Marbury to "reasonably anticipate being haled into court" in Georgia. *World-Wide Volkswagen Corp. v. Woodson*, supra at 297. Mr. Marbury has not lived in Georgia since August 1971. The Marburys were newly married at the time of their residence in Georgia, and there is nothing in the record to indicate that any of the events which led up to the divorce occurred in Georgia.

The applicability of long arm jurisdiction must be assessed on a case by case basis. Due process requires that there be minimum contacts between the defendant and the forum. *Intl. Shoe Corp. v. Washington*, supra at 316. The "minimum contacts" requirement of *Intl. Shoe* represented a significant expansion of in personam jurisdiction beyond the rigid confines of *Pennoyer v. Neff*, 95 U. S. 714 (24 LE 565) (1877), which held that a state's exercise of personal jurisdiction over a non-resident was a nullity unless personal service had been waived or personal service made while defendant was present in the forum state. A relaxation of this inflexible standard was necessi-

tated by the expansion of commerce in this country and by the increasing mobility of the population. While substantially relaxing the standard of *Pennoyer v. Neff*, supra, in *Intl. Shoe Co. v. Washington*, supra, and *McGee v. Intl. Life Ins. Co.*, 355 U. S. 220 (78 SC 199, 2 LE2d 223) (1957), the United States Supreme Court noted "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt*, 354 U. S. 416, 418 [(77 SC 1360, 1 LE2d 1456) (1957)]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. [Cit.]" *Hanson v. Denckla*, 357 U. S. 235, 251 (78 SC 1228, 2 LE2d 1283) (1958). For minimum contacts to be present ". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Cit.]" Id. at 253. Further, there must be a substantial connection between defendant's activities in the forum and the subject matter of the suit. Id. at 251-54; *Shellenberger v. Tanner*, 138 Ga. App. 399 (227 SE2d 266) (1976). These are requirements imposed by due process.

In the case before us, Mr. Marbury may have availed himself of the benefit of the laws of Georgia in that he was married here and was a resident of the state fourteen years before the divorce was filed. However, there is no indication that this activity on the part of Mr. Marbury had any connection with the subject matter of the present litigation, the dissolution of the marriage. Therefore, the attempt to exercise personal jurisdiction over Mr. Marbury was unconstitutional.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 13, 1987.

*Larry L. Taylor*, for appellant.
*Neal B. Littlejohn*, for appellee.