Milton SMITH, Plaintiff and Appellee,

v.

Joan Ruth SMITH, Defendant and Appellant.

Civ. No. 890361.

Supreme Court of North Dakota.

July 31, 1990.

Thomas J. Kuchera of Kuchera, Stenehjem & Wills, Grand Forks, for plaintiff and appellee.

Sandra Macpherson, Verona, Pa., for defendant and appellant, submitted on brief, and Karen K. Braaten of Alphson & Braaten, Grand Forks, pursuant to Rule 11.1, NDROC.

VANDE WALLE, Justice.

Joan Ruth Smith appealed from a judgment and decree of divorce entered in the District Court for Grand Forks County. On appeal, Joan contends that the trial court lacked the requisite jurisdiction to render a judgment which dissolved the marital status of the parties and adjudicated the various incidences in their marriage. We affirm in part and reverse in part.

Milton and Joan Smith were married on April 29, 1957, in Pittsburgh, Pennsylvania. The parties have three children, one of whom was a minor during this action. At the time of their marriage, Milton was on active duty in the United States Air Force.

During the years of Milton's service in the Air Force, the parties lived together in various places, including California, Ohio, Florida, South Carolina, and Washington, D.C. Milton, a technical sergeant, retired from the Air Force in 1976. Immediately thereafter, Milton and Joan purchased a house in Verona, Pennsylvania. Joan has continually resided in the Verona home since 1976.

Upon retiring from the Air Force, Milton obtained employment as a mechanic with an aircraft manufacturer. Milton's employment required him to relocate to various places within and outside of the United States. Joan declined to leave the home in Pennsylvania and, for many years, the parties saw one another only during Milton's occasional visits. Milton continued to provide support for Joan and the children primarily by having his Air Force retirement pay automatically deposited into a Pennsylvania bank account to which Joan had access.

Milton eventually moved to North Dakota, where his employer held a number of maintenance contracts. In January of 1986, Milton established a residence for himself in Larimore, North Dakota, and has been a domiciliary of North Dakota at all times pertinent to this case. Joan has no connections to North Dakota other than the fact that her husband is domiciled in this State.

Milton commenced this divorce action in the District Court for Grand Forks County, North Dakota. A copy of the summons and complaint was personally served upon Joan in Pennsylvania on April 6, 1988. Milton's complaint, which alleged irreconcilable differences, requested the district court to issue a decree of divorce and to make an equitable distribution of the property and debts of the parties. In response to Milton's complaint, Joan filed an answer which raised, as an affirmative defense, that the trial court lacked "personal jurisdiction" over herself, a nonresident.[1] On March 9, 1989, Joan appeared specially before the district court and moved the court for a ruling on the jurisdictional issue. Briefs were submitted by the parties, and arguments were held on the motion. The district court entered an order accepting jurisdiction in the action, and a trial date was scheduled.

Joan did not appear before the district court on the date set for trial. After a hearing in which a variety of evidence was offered by Milton, the court entered its Findings of Fact, Conclusions of Law, and Order for Judgment. The court's order terminated the marital relationship of the parties; required Milton to convey any interest he had in the Verona, Pennsylvania, home to Joan; required Milton to pay all of the unsecured debts of the marriage; awarded Joan one-half of Milton's Air Force retirement pay; awarded Milton all of the personal property currently in his possession; awarded Joan all of the personal property currently in her possession; and required Milton to pay child support for the minor child in the amount of $660 per month.[2] A judgment and decree of divorce was subsequently entered.

On appeal, Joan contends that the trial court lacked the requisite jurisdiction to render a judgment which dissolved the marital status of the parties and adjudicated the various incidences of their marriage.

Divorce proceedings typically contain two principal components: (1) the dissolution of the marital status, and (2) the adjudication of the incidences of the marriage. The "divisible divorce" doctrine recognizes that each of these components have "distinct and separate jurisdictional foundations." *Hall v. Hall*, 585 S.W.2d 384, 385 (Ky.1979).

■ It has been determined that the dissolution of the marriage is an *in rem* proceeding and that, if process has been properly effectuated, a court has jurisdiction to change the marital status of the parties even when only one party to the marriage is a resident of the state in which the court is located. *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); *Williams v. State of North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942).[3] *See also*

---

1. Joan also instituted a divorce proceeding in the Court of Common Pleas for Allegheny County, Pennsylvania, on February 23, 1989.

2. Milton originally attempted to commence this action on January 27, 1988, by a letter from his attorney to Joan which contained a settlement proposal and a request to admit service. Joan did not respond to the letter, but did initiate a Revised Uniform Reciprocal Enforcement of Support Act (RURESA) petition in Pennsylvania addressed to the District Court for Ward County, North Dakota. On April 26, 1988, the Ward County District Court entered an order *pendente lite* requiring Milton to pay $660 per month child support for the parties' minor child. The

District Court for Grand Forks County incorporated the terms of the order *pendente lite* into its divorce judgment and vacated the order.

3. The United States Supreme Court case of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), spoke to the interrelationship between *in rem* and *in personam* jurisdiction. In *Shaffer*, an action involving a shareholder's derivative suit against nonresident officers of a Delaware corporation, the Supreme Court recognized that:

"[t]he phrase 'judicial jurisdiction over a thing' is a customary eliptical way of referring to jurisdiction over the interests of a person in a thing.... This recognition leads to the con-

*In re Marriage of Passiales,* 144 Ill.App.3d 629, 98 Ill.Dec. 419, 494 N.E.2d 541 (1986); *Schilz v. Superior Court,* 144 Ariz. 65, 695 P.2d 1103 (1985); *Simpson v. O'Donnell,* 98 Nev. 516, 654 P.2d 1020 (1982); 27A C.J.S. *Divorce* § 106 (1986); Leflar, American Conflicts Law § 223 (4th ed. 1986); Restatement (Second) of Conflict of Laws § 71 (1971). Indeed, this Court has recognized that a court need "not have personal jurisdiction over both spouses to validly terminate the marital status" if procedural due process has been met, and that "as long as the plaintiff satisfies the six-month residency requirement under [NDCC] § 14–05–17," a court has jurisdiction to change the parties' marital status "no matter where" the defendant spouse resides. *Byzewski v. Byzewski,* 429 N.W.2d 394, 397 (N.D.1988). In the instant case, it is clear that Milton met North Dakota's residency requirements for divorce, and that Joan was personally served with a copy of Milton's summons and complaint. Accordingly, the trial court had the authority to terminate their marital status.

But meeting the jurisdictional requirements to sever the marital status itself "does not necessarily grant the court the authority to adjudicate the related inciden[ces] of the marriage." *Id.* at 397. "Before adjudicating the incidences of the parties' marriage," a trial court "is required to obtain *in personam* jurisdiction over both [of the spouses]." *Simpson, supra,* 98 Nev. at 518, 654 P.2d at 1021. *See also Estin v. Estin, supra.* Thus, a court must have personal jurisdiction over a nonresident spouse in order to validly adjudicate matters of alimony or spousal support [*Vanderbilt v. Vanderbilt,* 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); *Estin v. Estin, supra; Schroeder v. Schroeder,* 430 So.2d 604 (Fla.App.1983)]; the distribution or division of property [*In re Marriage of Passiales, supra; In re Marriage of Hud-*

---

clusion that in order to justify an exercise of jurisdiction *in rem,* the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing. The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe* [*Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ]." *Shaffer, supra,* 433 U.S. at 207, 97 S.Ct. at 2581, 53 L.Ed.2d at 699.

The Supreme Court concluded that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer, supra,* 433 U.S. at 212, 97 S.Ct. at 2584, 53 L.Ed.2d at 703. Nevertheless, the Court determined that the presence of a nonresident's property interests in a state may directly bear upon the existence of jurisdiction by providing the necessary contacts between the forum state and the individual, and it specifically noted that:

"jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state court jurisdiction must satisfy the *International Shoe* standard." *Shaffer, supra,* 433 U.S. at 208, 97 S.Ct. at 2582, 53 L.Ed.2d at 700.

Because of the *Shaffer* decision, jurisdictional requirements for obtaining a dissolution of the marital status have become unclear. Authors have been critical of the past *in rem* divorce decisions of the Supreme Court in *Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); and *Williams v. State of North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). *See* Note, *Jurisdiction in the Ex Parte Divorce: Do Absent Spouses Have a Protected Due Process Interest in Their Marital Status,* 13 Mem.St.U.L. Rev. 205 (1983) [hereinafter Note, *Ex Parte Divorce: Marital Status* ]. However, courts which have analyzed and considered the issue have determined that even though the jurisdictional test for changing the status of married people may be a minimum-contacts test, the presence of the marital status in the forum state would be sufficient to meet that test, and that the changing of marital status in a dissolution proceeding is one of those *in rem* actions which, according to *Shaffer,* "would not be affected by a holding that any assertion of state court jurisdiction must satisfy the *International Shoe* standard." *See, e.g., In re Marriage of Rinderknecht,* 174 Ind.App. 382, 390, 367 N.E.2d 1128, 1135 (1977). *See also* Note, *Ex Parte Divorce: Marital Status,* 13 Mem.St.U.L.Rev. 205, 247 (1983) [*Shaffer* implies that a nonresident defendant's marital status is deserving of due process protection, "a conclusion not yet supported by the courts"].

Because Joan was not served personally in North Dakota, we need not struggle to analyze or apply the various opinions in *Burnham v. Superior Court of Calif., Marin Cty.,* — U.S. —, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990). Those opinions, although reaching the same result, take differing views of the effect of *Shaffer,* and whether or not personal service is, alone, a valid predicate for *in personam* jurisdiction in the forum State. Presumably, we will be further enlightened as to the Supreme Court's position in future decisions.

*son,* 434 N.E.2d 107 (Ind.App.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983)]; rights to child custody [*Simpson v. Simpson, supra; In re Marriage of Passiales, supra*]; and the award of child support [*Kulko v. Superior Court of California, Etc.,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Byzewski v. Byzewski, supra*]. *See generally* 27A C.J.S. *Divorce* § 106 (1986) [the jurisdiction of a court in a divorce case in which there is no personal jurisdiction over a nonresident defendant is generally confined only to a dissolution of the parties' marital status].

 A court obtains personal jurisdiction if there exists certain "minimum contacts" between the state and the party over whom the state seeks to exercise control so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Hust v. Northern Log, Inc.,* 297 N.W.2d 429, 431 (N.D.1980). The minimum-contact requirement for obtaining *in personam* jurisdiction over a nonresident can be met in two ways: (1) if the requirements of the North Dakota's "long arm" provision are met [*see* Rule 4(b)(2), NDRCivP]; or (2) if the nonresident appears and fails to assert the trial court's lack of *in personam* jurisdiction .[*see United Accounts, Inc. v. Lantz,* 145 N.W.2d 488 (N.D.1966)]. In the instant case, the record demonstrates that Joan has no connections to North Dakota other than the fact that her husband moved here and has become a resident. It also reveals that Joan appeared specially to contest the jurisdiction of the court to render its judgment. Under the circumstances, we conclude that Joan's contacts with North Dakota were insufficient to justify our exercise of jurisdiction to adjudicate the incidences of the marriage; therefore the maintenance of the action against her offends "traditional notions of fair play and substantial justice." Because the trial court did not have personal jurisdiction

over Joan, that portion of the judgment which adjudicates the incidences of the parties' marriage was improperly entered and must be vacated.[4]

The portion of the trial court's judgment dissolving the marital status of the parties is affirmed, and the portion of the judgment adjudicating the incidences of the marriage is reversed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

**4.** As a result of our partial reversal, the order *pendente lite* for child support, which was vacat-

ed by the district court's judgment, remains in effect.