## S96A1770. ABERNATHY v. ABERNATHY.
(482 SE2d 265)

CARLEY, Justice.

Elizabeth Susan Denny and John Michael Abernathy were married in Florida and resided in Louisiana until their separation. Thereafter, Mr. Abernathy moved to Georgia and, about a year later, he brought this divorce action against Ms. Denny. In his complaint, Mr. Abernathy requested only that he be awarded a total divorce from Ms. Denny and that the property located in Georgia be awarded

---

to him. After Ms. Denny filed an answer raising the defense of lack of personal jurisdiction, Mr. Abernathy filed a "motion to determine jurisdiction and/or dismiss defenses of special appearing defendant." The trial court conducted a hearing on Mr. Abernathy's motion and concluded that it had "jurisdiction over the res of the marriage relationship" and "in rem jurisdiction with respect to [the] property located within this State." The trial court certified its order for immediate review and we granted Ms. Denny's application for an interlocutory appeal.

Ms. Denny insists that the trial court erred in ruling that it has personal jurisdiction over her. However, the trial court never ruled that it has *personal* jurisdiction over Ms. Denny. Instead, the trial court ruled only that it has jurisdiction over the res of the marriage so as to determine the issue of divorce and in rem jurisdiction over the marital property located in this state so as to determine the issue of the division of that property. Accordingly, if the trial court has jurisdiction over the marriage and the marital property in Georgia, the order was correct without regard to the trial court's lack of personal jurisdiction over Ms. Denny herself.

Personal jurisdiction over the defendant is not a prerequisite to the grant of a divorce by a Georgia court. *Charamond v. Charamond*, 240 Ga. 34, 35 (2) (239 SE2d 362) (1977). The party seeking a divorce need show only that the trial court has jurisdiction over the res of the marriage which results from his or her domicile in this state for the six-month period preceding the filing of the action. OCGA § 19-5-2; *Charamond v. Charamond*, supra; *Abou-Issa v. Abou-Issa*, 229 Ga. 77-78 (189 SE2d 443) (1972).

> [E]ach state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent.

*Williams v. North Carolina*, 317 U. S. 287, 298-299 (63 SC 207, 87 LE 279) (1942); *Page v. Page*, 255 Ga. 145, 146 (1) (a) (335 SE2d 865) (1985). "[T]he divorce granted one spouse in one state will bind the other spouse in his or her domicile if the requirements of procedural due process are met." *Page v. Page*, supra at 146 (1) (a).

Accordingly, any reliance upon the Long Arm Statute in this case is erroneous because that statute deals only with the exercise of *personal* jurisdiction over nonresidents. OCGA § 9-10-91. The Long Arm Statute does not apply in every case in which the defendant is a nonresident. It applies only in cases in which personal jurisdiction over the nonresident defendant is required. Accordingly, compliance with the Long Arm Statute would be mandated in this case if the trial court's personal jurisdiction over Ms. Denny was necessary to its adjudication of Mr. Abernathy's claims against her. However, the

trial court was not required to have personal jurisdiction over Ms. Denny in order to adjudicate Mr. Abernathy's claim for divorce. After Mr. Abernathy obtained proper service by publication, the clerk of the trial court mailed a copy of the published notice to Ms. Denny. Ms. Denny had actual notice of the pendency of the divorce action and, indeed, made a special appearance to contest personal jurisdiction. In these circumstances, the trial court clearly has jurisdiction to grant a divorce based on service by publication. *Albers v. Albers*, 238 Ga. 590, 591 (1) (234 SE2d 507) (1977). See also *Chafin v. Burroughs*, 224 Ga. 774 (164 SE2d 826) (1968); *Marbury v. Marbury*, 256 Ga. 651, 652 (1) (352 SE2d 564) (1987).

It is certainly true that a trial court with jurisdiction to grant a divorce cannot award either alimony or attorney's fees unless it also has personal jurisdiction over the defendant. *Anthony v. Anthony*, 237 Ga. 753, 754 (229 SE2d 609) (1976); *Hammers v. Hammers*, 230 Ga. 711 (198 SE2d 656) (1973); *Hicks v. Hicks*, 193 Ga. 446 (1) (18 SE2d 754) (1942). The award of such monetary judgments must be predicated upon the trial court's personal jurisdiction over the defendant. Here, however, the trial court awarded neither alimony nor attorney's fees. In addition to a divorce from Ms. Denny, Mr. Abernathy prayed only for a division of the marital property located in Georgia. A lack of personal jurisdiction does not prevent the trial court from entering certain other judgments in rem. Personal jurisdiction in Georgia may be required in order to obtain a judgment which will personally bind a nonresident defendant as to marital property located in another forum. See OCGA § 9-10-91 (5). However, notwithstanding a lack of personal jurisdiction over the defendant in a divorce case, a trial court can render a valid judgment in rem with respect to the res of the property within its territory. *Albers v. Albers*, supra at 592 (3); *Anthony v. Anthony*, supra at 754; *Grimmett v. Barnwell*, 184 Ga. 461, 478 (2) (192 SE 191) (1937). Mr. Abernathy does not seek a division of marital property which is located in Louisiana or any state other than Georgia. It follows that the trial court not only has jurisdiction to grant Mr. Abernathy a divorce, it also has in rem jurisdiction to determine the respective interests of Mr. Abernathy and Ms. Denny in any marital property located in this state.

It is urged that *Shaffer v. Heitner*, 433 U. S. 186 (97 SC 2569, 53 LE2d 683) (1977) has changed the above-stated legal principles. However, *Shaffer* did not hold that it is unconstitutional for a state court to exercise its in rem jurisdiction and that only a state court's exercise of its personal jurisdiction is constitutional. All that *Shaffer*, supra at 212, holds is that assertions of state court jurisdiction, whether in rem or in personam, must satisfy the "minimum contacts" standard. As *Shaffer*, supra at 208, itself clearly pointed out,

> jurisdiction over many types of actions which now are or might be brought in rem would *not* be affected by a holding

that any assertion of state-court jurisdiction must satisfy the ["minimum contacts"] standard.

(Emphasis supplied.) *Shaffer v. Heitner,* supra at 208. Accordingly, Mr. Abernathy's divorce action does not violate applicable constitutional mandates if the "minimum contacts" standard for an in rem action is satisfied, without regard to Ms. Denny's own personal lack of direct contact with Georgia.

The limited holding of *Shaffer,* supra at 208-209, is that the mere presence of property in a state, standing alone, will not constitute sufficient "minimum contacts" to support the state's exercise of its in rem jurisdiction, *if* the property is unrelated to the underlying cause of action. Thus, the "minimum contacts" standard does not foreclose the exercise of state court jurisdiction over a true in rem action or a case wherein the plaintiff " 'is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons,' " or "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant." *Shaffer v. Heitner,* supra at 199, fn. 17, 207. Obviously, a dispute between divorcing resident and non-resident parties as to marital property located in Georgia would constitute such a claim. In such a case, there is more than the mere presence of property to support the in rem jurisdiction of a Georgia court to determine the dispute.

> [T]he defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State.

*Shaffer v. Heitner,* supra at 207-208. When service by publication is used not merely to compel the presence of the defendant or for some other purpose extraneous to the litigation, but to adjudicate rights in the very property upon which in rem jurisdiction is based, the "minimum contacts" test is met. *Shaffer v. Heitner,* supra; *Chenoweth v. Chenoweth,* 575 SW2d 871, 873 (Mo. App. 1978); *In re Marriage of Breen,* 560 SW2d 358, 363 (Mo. App. 1977). Therefore, where, as here, the only property at issue in a Georgia divorce action is such marital property as is situated in Georgia and the nonresident spouse claims an interest therein, the Georgia property is the very subject of the litigation, and a Georgia court has full in rem jurisdiction which has not been substantively changed by *Shaffer. Chenoweth v. Chenoweth,* supra at 874. It is only that in rem jurisdiction which Mr. Abernathy invoked and the trial court exercised in this

case.

If the trial court in a divorce case could not exercise such in rem jurisdiction, then a resident of Georgia who possesses marital property here could not obtain a divorce and a disposition of that property from the courts of this state unless, at some time, the other party has resided in Georgia. If the trial court in the instant case could not exercise in rem jurisdiction, then, although Mr. Abernathy has been a resident of Georgia for more than six months and owns property in this state, only the courts of Louisiana would be able to dissolve his marriage and make a disposition of his Georgia property. Those who reside in Georgia for at least six months are entitled to access to the courts of their own state for the purpose of dissolving their marriages and dividing any marital property actually located here. The trial court correctly concluded that it has jurisdiction over the parties' marital relationship and the disposition of property situated in Georgia. Mr. Abernathy need not resort to the Long Arm Statute unless and until he seeks some form of relief, such as alimony or attorney's fees or division of non-Georgia marital property, which requires personal jurisdiction over Ms. Denny herself.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

FLETCHER, Presiding Justice, dissenting.

I concur fully in Justice Sears' dissent. I write separately to emphasize the inherent unfairness in the approach taken by the majority. The majority's opinion opens the doors of Georgia's courts to any citizen of this country who wants to divorce and to obtain an unfair advantage over his or her spouse in the division of marital property. All any citizen need do is leave his or her marital home, take any or all assets of the couple, move to Georgia and file for divorce in six months. The non-resident spouse is then forced to litigate his or her claim to those marital assets in a foreign jurisdiction. The United States Supreme Court seemed to foreclose such unfairness in the divorce context a generation ago by refusing to allow easily obtained Nevada divorces to cut off property rights of non-resident spouses.[1]

Additionally, 20 years ago in *Shaffer v. Heitner*[2] the United States Supreme Court emphasized the importance of "fairness" in all exercises of state court jurisdiction. In *Shaffer*, the Court held that "quasi in rem" jurisdiction must be treated like "in personam" jurisdiction and subjected to the "minimum contacts" analysis of *International Shoe Co. v. Washington*[3] and its progeny.[4] Here, husband seeks

[1] See *Estin v. Estin*, 334 U. S. 541 (68 SC 1213, 92 LE 1561) (1948); *Vanderbilt v. Vanderbilt*, 354 U. S. 416 (77 SC 1360, 1 LE2d 1456) (1957).

[2] 433 U. S. 186 (97 SC 2569, 53 LE2d 683) (1977).

[3] 326 U. S. 310 (66 SC 154, 90 LE 95) (1945).

to adjudicate only his and his wife's interests in real and personal marital property in Georgia. Thus, any judgment would be "quasi in rem" because it seeks to "secure [his] pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of [his wife]."[5] Husband does not seek an "in rem" judgment against property in Georgia. "In rem" jurisdiction, such as a quiet title action against all the world, exists to determine "the interests of all persons in designated property"[6] Because this is a "quasi in rem" case, the court must have personal jurisdiction over both parties to adjudicate their interests in the property.

The wife lacks any semblance of minimum contacts with this state: she has never lived here and she did not participate in the decision of her husband to acquire property in this state.[7] Therefore, the courts of this state are not authorized to exercise jurisdiction over her to determine her interests in marital property, real and personal, that her husband happened to bring with him from Louisiana or purchase once he arrived in Georgia. Forcing the wife to litigate her interests in marital assets wherever her husband happens to relocate violates "traditional notions of fair play and substantial justice."[8] Therefore, I strongly dissent.

I am authorized to state that Justice Sears joins in this dissent.

SEARS, Justice, dissenting.

In ruling that the trial court properly exercised jurisdiction in this case, the majority demonstrates fundamental misunderstandings of our domestic relations long-arm statute[9] and of the minimum contacts test set forth by the United States Supreme Court in *Shaffer v. Heitner*.[10] For the reasons that follow, I would hold that OCGA § 9-10-91 (5) and the minimum contacts test preclude the exercise of jurisdiction by the trial court in this case.

1. The majority reasons that compliance with OCGA § 9-10-91 (5) is unnecessary in this case because it only applies to the exercise of personal jurisdiction and because Mr. Abernathy's claims for divorce and division of the parties' property only invoke principles of in rem jurisdiction. The majority, however, overlooks the simple pro-

---

[4] 433 U. S. at 212.

[5] *Hanson v. Denckla*, 357 U. S. 235, 246, n. 12 (78 SC 1228, 2 LE2d 1283) (1958).

[6] Id.

[7] Compare *Williams v. Williams*, 433 A2d 1316 (N.H. 1981) (New Hampshire court had personal jurisdiction over non-resident wife where husband and wife jointly built house in New Hampshire and wife spent several months of every year for eight years with husband in New Hampshire); *Hann v. Hann*, 421 A2d 607 (N.J. Super. 1980) (personal jurisdiction over non-resident husband where parties jointly built two houses in New Jersey during marriage and since separation, husband had traveled to New Jersey to check on wife and threaten her).

[8] *International Shoe*, 326 U. S. at 316.

[9] OCGA § 9-10-91 (5).

[10] *Shaffer v. Heitner*, 433 U. S. 186 (97 SC 2569, 53 LE2d 683) (1977).

position that the legislature in enacting § 9-10-91 (5) chose to require personal jurisdiction to litigate the claims asserted by Mr. Abernathy in this case.

Conspicuously absent from the majority opinion is any mention of the language of § 9-10-91 (5). OCGA § 9-10-91 provides, in relevant part, that

> [a] court of this state may exercise *personal jurisdiction* over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> . . .
>
> (5) With respect to proceedings for alimony, child support, *or division of property in connection with an action for divorce* or with respect to an independent action for support of dependents, *maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action*, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce.

(Emphasis supplied.)

Thus, the statute plainly addresses actions for "division of property in connection with an action for divorce" and provides that a trial court "may exercise personal jurisdiction over any nonresident" in such an action if the cause of action arises from the maintenance of "a matrimonial domicile in this state at the time of the commencement of this action" or from the residence of "the defendant . . . in this state preceding the commencement of the action, whether cohabiting during that time or not."[11] Further, given the broad, expansive language of "proceedings" for "division of property in connection with an action for divorce," and given that property division in divorce cases typically involves property located in this state, the only reasonable construction of § 9-10-91 (5) is that the General Assembly intended it to govern divorce cases involving the division of property located within this state. Moreover, if the General Assembly had intended for this language only to apply to the division of property located outside of this state, it easily could have, and presumably would have, added language to that effect. Finally, by providing requirements for how a trial court may exercise personal jurisdiction in divorce and property division cases, the General Assembly clearly intended for personal jurisdiction to be a requisite for a Georgia court

---

[11] Id.

to exercise jurisdiction in those cases. Otherwise, the statute need not have contained language regarding divorce and property division cases, and the inclusion of those cases within the scope of § 9-10-91 (5) would be completely meaningless.

Further, it is beyond dispute that the General Assembly has the power to require personal jurisdiction in cases of divorce and division of property located in this state if it so desired and to set forth the type of contacts necessary to exercise that jurisdiction. Other courts have moved in this direction,[12] and I believe our legislature did so in adopting § 9-10-91 (5).

Moreover, the phrase "personal jurisdiction" does not mean, as the majority concludes, that the General Assembly did not intend § 9-10-91 (5) to apply to what have been regarded as in rem cases. First, as I have explained, it is contrary to the statute's clear intent. Second, before paragraph (5) of § 9-10-91 was adopted, a blurring of the Latin labels in personam and in rem was occurring, as was a blurring of the requirements for exercising in personam and in rem jurisdiction. For instance, in *Shaffer*, the Supreme Court stated that "[t]he fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification,"[13] and concluded that in rem jurisdiction had to be justified based upon the minimum contacts test set forth for in personam jurisdiction in *International Shoe Co. v. Washington,* 326 U. S. 310 (66 SC 154, 90 LE 95) (1945).[14] Furthermore, since *Shaffer*, the Supreme Court has confirmed the melding of the labels of in personam and in rem jurisdictions. In *Burnham v. Superior Court of California,* Justice Scalia wrote the following regarding *Shaffer*:

> *Shaffer* was saying . . . that *quasi in rem* jurisdiction, that fictional "ancient form," and *in personam* jurisdiction, are really one and the same and must be treated alike — leading to the conclusion that *quasi in rem* jurisdiction, i.e., that form of *in personam* jurisdiction based upon a "property ownership" contact and by definition unaccompanied by personal, in-state service, must satisfy the litigation-relatedness requirement of *International Shoe*. The logic of *Shaffer's* holding . . . places all suits against absent nonresidents on the same constitutional footing, regardless of whether a separate Latin label is attached.[15]

Against this backdrop, it is reasonable for the General Assembly

---

[12] *Villarroel v. Villarroel,* 562 A2d 1180 (2) (Del. 1989); *Mock v. Mock,* 400 SE2d 543, 544-545 (Va. App. 1991); *Smith v. Smith,* 459 NW2d 785, 787-789 (N.D. 1990).
[13] *Shaffer,* 433 U. S. at 212.
[14] *Shaffer,* at 207, 212.
[15] 495 U. S. 604, 621 (110 SC 2105, 109 LE2d 631) (1990).

to have set forth the minimum contacts necessary for a court of this state to exercise jurisdiction over a nonresident in divorce and property division cases when the property to be divided was located in this state, and to have used the label of "personal jurisdiction."

With its opinion today, the majority of this Court effectively strikes the language "or division of property in connection with an action for divorce" from § 9-10-91 (5) and, in doing so, tells the General Assembly that it acted uselessly and unnecessarily in adopting rules to govern jurisdiction in such actions. This obliteration of statutory language is unacceptable to me, and contrary to all rules of statutory construction.

Moreover, this Court has previously given § 9-10-91 (5) the construction that I advance in this dissent. In *Heath v. Heath*,[16] involving, among other things, a claim for division of property located within this state, this Court held as follows:

> If a foreign court has *in personam jurisdiction* over the defendant, it may adjudicate *property rights such as* alimony, child support, and *title to real property*. *Whitaker v. Whitaker*, 237 Ga. 895 (230 SE2d 486) (1976). Such a right is *afforded by our domestic long-arm statute under* OCGA § 9-10-91 (5) provided the defendant has had sufficient minimum contacts with the state. From the record it appears that because of husband's contacts with the state and wife's residency the Georgia court has in personam jurisdiction over both parties and may decide their property rights.[17]

Additionally, in *Kemp v. Sharp*,[18] we have stated that " 'Georgia's domestic-relations long arm statute' (*Braden v. Braden*, 260 Ga. 269, 270 (392 SE2d 710) (1990)), . . . applies by its own terms only to actions involving alimony, child support, and division of property. The action brought by Kemp against Sharp involved none of those matters." The clear implication of the foregoing is that if the action brought by Kemp had involved any one "of those matters," i.e., alimony, child support, or division of property, the long-arm statute would have been applicable. Significantly, in commenting on the scope of § 9-10-91 (5) in *Kemp*, we did not state that it applies "only to actions involving . . . division of property [located outside this state]."

Instead of eviscerating § 9-10-91 (5), I would apply its terms to Mr. Abernathy's action for divorce and division of property. Because Ms. Denny did not maintain a "matrimonial domicile" in Georgia at the time Mr. Abernathy filed his complaint and because she did not

---

[16] 257 Ga. 777, 778 (364 SE2d 272) (1988).
[17] (Emphasis supplied.) Id. at 778.
[18] 261 Ga. 600 (409 SE2d 204) (1991).

reside in Georgia before the action was filed, I would hold that the trial court erred in exercising jurisdiction, and I would reverse the trial court's denial of her motion to dismiss.[19]

2. Further, even assuming that § 9-10-91 (5) is inapplicable to this case, the trial court nevertheless erred in exercising jurisdiction in that doing so violates fundamental notions of fair play and substantial justice and does not meet the minimum contacts test established by the United States Supreme Court.

Although the majority correctly states that *Shaffer v. Heitner* does not preclude the exercise of jurisdiction over actions in rem, the majority fails to give any meaningful analysis of whether minimum contacts were satisfied in this case. Instead, the majority focuses on the following quote from *Shaffer*:

> This argument, of course, does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.[20]

Relying on this example, the majority in this case reduces the minimum contacts test for cases involving the division of property located in this state to one factor — whether the property is related to the litigation. This reductionist approach, however, is contrary to the Supreme Court's decision in *Shaffer* and other cases. In *Shaffer,* referring to the foregoing illustration, the Supreme Court stated that it did not include all of the factors that would satisfy the minimum contacts test and that the factors the Court mentioned were not "necessarily decisive."[21] Further, in a footnote, the court stated that "[i]n some circumstances the presence of property in the forum [s]tate will not support the inference suggested in text [i.e., that the exercise of jurisdiction is appropriate when the property is located in a state and is related to the litigation]. Cf., e.g., Restatement [(Second) of Conflict of Laws] § 60, Comments c, d."[22] In this regard, Comment c of the

---

[19] See *Frasca v. Frasca*, 254 Ga. 532, 535 (3) (330 SE2d 889) (1985); Lanier, Connecting Defendant's Contact and Plaintiff's Claim: The Doctrine of Specific Jurisdiction and the Matrimonial Domicile Provisions of the Georgia Long-Arm Statute, 11 Ga. St. U. L. Rev. 303 (1995).

[20] (Footnotes omitted.) *Shaffer*, 433 U. S. at 207.

[21] *Shaffer*, 433 U. S. at 208-209, n. 28.

[22] Id. at 208, n. 25.

Restatement § 60 provides that "[a] state will not usually exercise judicial jurisdiction to affect interest in a chattel brought into its territory without the consent of the owner unless and until the owner has had a reasonable opportunity to remove the chattel." The Court in *Shaffer* also cautioned that the minimum contacts test is one of reasonableness and is not subject to mechanical application.[23] Thus, contrary to the majority opinion, the Supreme Court did not hold that the fact that property is related to a cause of action dictates a holding that the minimum contacts test is satisfied. Finally, the Supreme Court emphasized in *Shaffer* that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny."[24]

Although the majority does not evaluate the exercise of jurisdiction in this case pursuant to those standards, I will do so. Under *International Shoe*[25] and its progeny, a defendant must " 'have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "[26] Further,

> the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington, supra*, at 316, [66 SC at 158]. . . . "[C]ritical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [*World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. [286, 297 (100 SC 559, 62 LE2d 490) (1980)]. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U. S. 235, 253 [(78 SC 1228, 1239-1240, 2 LE2d 1283)] (1958):
>
>> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case

---

[23] *Shaffer*, 433 U. S. at 203-204. In *Kulko v. Superior Court of Calif.*, 436 U. S. 84, 92 (98 SC 1690, 56 LE2d 132) (1978), the court stated that "[l]ike any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. *Hanson v. Denckla*, 357 U. S. 235, 246 [(78 SC 1228, 1235, 2 LE2d 1283)] (1958)."

[24] *Shaffer*, 433 U. S. at 212.

[25] 326 U. S. 310.

[26] *Kulko v. Superior Court of Calif.*, 436 U. S. at 92, quoting *International Shoe*, 326 U. S. at 316.

that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U. S. [770, 774 (104 SC 1473, 79 LE2d 790) (1984)]; *World-Wide Volkswagen Corp. v. Woodson, supra,* [444 U. S.] at 299, [100 SC at 568] or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall,* [466 U. S. 408, 417 (104 SC 1868, 80 LE2d 404) (1984)].[27]

Similarly, this Court has held that

[d]ue process requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King v. Rudzewicz,* 471 U. S. 462 (105 SC 2174, 85 LE2d 528) (1985). In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice. *Straus v. Straus,* 260 Ga. 327 (393 SE2d 248) (1990); *Smith v. Smith,* 254 Ga. 450 (330 SE2d 706) (1985).[28]

Clearly, then, a significant factor in considering whether the dictates of *Shaffer v. Heitner* are satisfied in this case is whether Ms. Denny has purposefully availed herself of the benefits and protections of the State of Georgia. The answer: She has not. She was not married here, has never lived here, has never brought property into this state, and has never bought property in this state. She simply has done no act to avail herself of the benefits and protections of this state. Rather, it is the unilateral action of Mr. Abernathy in moving to Georgia and purchasing property here that has created a connection with the State of Georgia. Under the foregoing authority, the unilateral actions of Mr. Abernathy are insufficient to satisfy the minimum contacts test.

Further, basic considerations of fairness dictate that Georgia is

---

[27] *Burger King Corp.v. Rudzewicz,* 471 U. S. 462, 474-475 (105 SC 2174, 85 LE2d 528) (1985).

[28] *Beasley v. Beasley,* 260 Ga. 419, 421 (396 SE2d 222) (1990).

not the proper forum for resolving Mr. Abernathy's claim. Ms. Denny has never availed herself of Georgia and has at all times remained in Louisiana, the state of matrimonial domicile. Mr. Abernathy, on the other hand, left that State and moved to Georgia, purchasing real property here after the separation. Under these circumstances, it would be unfair to Ms. Denny to impose upon her the financial and personal difficulties of litigating in Georgia.[29] Further, in *Burger King*, the Supreme Court stated that a factor to consider in determining whether the exercise of jurisdiction "comport[s] with 'fair play and substantial justice' " is the " 'interstate judicial system's interest in obtaining the most efficient resolution of controversies.' "[30] In cases such as the present one, where there is another state (Louisiana) that can resolve the parties' entire controversy, the majority opinion will foster the inefficient resolution of divorce issues, with, in many cases, this state resolving property division issues regarding property located in this state, and the other state resolving alimony, child support, and property division issues regarding property located in that state. Moreover, considering the close connection between property division issues and alimony and child support issues,[31] this is an ineffective method to resolve the bundle of issues that can arise from a divorce.

Instead of evaluating Ms. Denny's contacts with Georgia under *International Shoe* and its progeny, the majority simply concludes that the location of the disputed property here is a sufficient minimum contact. For the reasons given above, this analysis is misguided. Moreover, the majority relies on two Missouri cases for this proposition.[32] *Chenoweth*, however, followed the seminal Missouri case of *In re Marriage of Breen*, and *Breen* correctly recognized that the "perennial rules of due process for judgments in rem and quasi in rem *have been reordered* by the United States Supreme Court very recently in *Shaffer v. Heitner*," and had been replaced by the minimum contacts analysis set forth in *International Shoe*.[33] Significantly, in ruling that the trial court could exercise jurisdiction based upon a minimum contacts analysis, the court in *Breen* considered it critical that the parties, including the nonresident, had purchased real estate in Missouri.

The acquisition of the real estate within Missouri by the

---

[29] See *Kulko*, 436 U. S. at 97-98 (the Supreme Court held that considerations of fairness would be violated if husband, who continued to live in the state of matrimonial domicile (New York), had to litigate child support in California, the state to which the wife had moved).

[30] *Burger King*, 471 U. S. at 476-477.

[31] *Stokes v. Stokes*, 246 Ga. 765, 772-773 (273 SE2d 169) (1980).

[32] *Chenoweth v. Chenoweth*, 575 SW2d 871 (Mo. App. 1978); *In re Marriage of Breen*, 560 SW2d 358 (Mo. App. 1977).

[33] *Breen*, 560 SW2d at 362.

marriage was a purposeful avail by the spouses of the protection by this sovereignty of their interests in the property. It was a conscious assumption of risk that the State would exercise its power over their property interests, and certainly would adjust their disputes over ownership should the marriage dissolve. *Hanson v. Denckla*, 357 U. S. 235, 253, [supra].[34]

The present case stands in stark contrast to *Breen*. Here, as has been previously outlined in this dissent, Ms. Denny has not purposefully availed herself of Georgia sovereignty by purchasing property in this state or otherwise.

Significantly, the majority opinion conflicts with the holdings of other courts and the analysis of commentators. In this regard, these courts and commentators reason that where one spouse takes marital property to another state and files for divorce in that state, that state cannot exercise jurisdiction over the nonresident spouse because the nonresident spouse has not purposefully availed herself of the benefits and protections of the laws of the state where the property is located.[35]

For the foregoing reasons, I would hold in this case that the trial court's exercise of jurisdiction is inconsistent with the constitutional limitations discussed above.

3. Because the majority misconstrues § 9-10-91 (5), as well as the minimum contacts test, and because a proper analysis of § 9-10-91 (5) and the minimum contacts test mandate the reversal of the trial court's exercise of jurisdiction, I dissent to the majority opinion.

I am authorized to state that Presiding Justice Fletcher joins in this dissent.

DECIDED MARCH 3, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997.

*Hirsch, Partin, Grogan & Grogan, John P. Partin,* for appellant.
*Cohn & Cohn, Leslie L. Cohn,* for appellee.
*McCamy, Phillips, Tuggle & Fordham, Joseph T. Tuggle, Jr., Kutner & Bloom, Jean M. Kutner,* amici curiae.

---

[34] *Breen* at 363.
[35] Oldham, Conflict of Laws and Marital Property Rights, 39 Baylor L. Rev. 1255, 1264-1265 (1987); *Carroll v. Carroll*, 363 SE2d 872, 873-875 (N.C. App. 1988); *Shamley v. Shamley*, 455 SE2d 435, 437-439 (N.C. App. 1994); *Smith v. Smith*, 459 NW2d 785 (N.D. 1990).