**Anna I. MASON, Appellant,**

v.

**Anthony J. MASON, Appellee.**

**No. 01–07–00809–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 24, 2010.

---

Linda Ann Hinds, Steven H. Schweitzer, Fullenweider Wilhite, P.C., Robert Ryan Lindsay, The Fullenweider Firm, Houston, TX, for Appellant.

Sallee S. Smyth, Richmond, TX, Sherri Ann Evans, Short Jenkins Kamin, LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In the trial court, appellee, Anthony J. Mason ("Tony"), obtained a "Final Divorce Decree," which granted a divorce between him and appellant, Anna I. Mason ("Anna"), and divided their marital estate.

Anna, a resident of California, who was served by publication, filed a post-decree special appearance only with respect to Tony's claim for division of the marital estate; she did not specially appear with respect to Tony's claim for divorce.[1]

Subject to her special appearance, Anna also filed a motion for new trial. The trial court denied Anna's special appearance and her motion for new trial. In two issues, Anna appeals these rulings.

Because we hold that the trial court lacked the required jurisdiction to make the property division, as asserted in Anna's special appearance, we reverse the decree insofar as it divides the property of the marital estate, and we render the judgment that the trial court should have rendered.

### Factual & Procedural Background

Tony and Anna were married in Virginia on November 27, 1992. The couple lived together in Virginia until 1994. For the next two to three years, the couple did not regularly reside together, with Tony living and working outside of Virginia for at least a part of this time. In 1996 or 1997, Anna filed for divorce in Virginia. The divorce, however, never became final. The couple remained married, but no longer had contact with one another. The couple had no children together.

In January 2004, Tony moved to Texas. Around this time, he requested a copy of the divorce decree from the Commonwealth of Virginia. The commonwealth notified Tony that it had no record of a divorce between him and Anna.

On November 2, 2004, Tony filed for divorce in Harris County district court. In his petition, Tony pled no jurisdictional facts indicating that the trial court had

---

1. See TEX.R. CIV. P. 120a ("A special appearance may be made as to an entire proceeding or as to any severable claim involved therein.").

personal jurisdiction over Anna. Tony stated that Anna could be served at an address in Kings Beach, California. Anthony requested the trial court to grant him a divorce from Anna and to divide the community estate "in a manner that the Court deems just and right, as provided by law."

After attempting unsuccessfully to serve Anna in California, Anthony obtained the court's permission to serve her by publication. The citation was published in the *Harris County Daily Court Review* on February 3, 2005. To represent Anna, the trial court appointed an attorney ad litem, who answered the suit by general denial.

On June 15, 2005, the trial court conducted a hearing on Tony's divorce petition. Tony and his attorney appeared, and the attorney ad litem appeared for Anna, who did not appear. Tony confirmed that he was unable to locate Anna for service of citation. The attorney ad litem also informed the court that she was unable to locate Anna.

At the conclusion of the hearing, the trial court rendered judgment granting Tony a divorce from Anna and dividing the marital estate. With regard to the property division, the trial court's decree provides that each party receive the personal property in that party's possession or titled in that party's name as his or her "sole and separate property." The court ordered that each party be responsible for debts, liabilities, and taxes incurred by that party.

Anna became aware of the divorce and property division in early 2007. On June 14, 2007, Anna filed a special appearance in which she alleged that, because it lacked personal jurisdiction over her, the trial court erred by dividing the marital estate. Subject to her special appearance, Anna also filed a motion for new trial in which she alleged, inter alia, that she had no knowledge of the divorce proceeding prior to rendition of the decree and that she had a meritorious defense to the suit.

After conducting a hearing, the trial court denied Anna's special appearance. Anna filed a formal bill of exception complaining that the trial court had not allowed her to provide jurisdictional evidence, specifically her own testimony, at the special appearance hearing.

Following an evidentiary hearing, the trial court also denied Anna's motion for new trial. This appeal followed. In two issues, Anna challenges the trial court's denial of her special appearance and its denial of her motion for new trial.

## Special Appearance

In her first issue, Anna contends that the trial court erred by denying her special appearance.

### A. Standard of Review

■ Because it involves a question of law, we review de novo a trial court's determination of a special appearance. *See Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 657 (Tex.2010); *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007).

### B. The Parties Agree on Certain Points

To assist in framing the special-appearance issue for discussion, we note that the parties agree on three significant points. First, the parties do not dispute that the trial court had jurisdiction to grant a divorce between Tony and Anna.

■ It is well-established that a court may grant a divorce to a Texas resident, even though it lacks personal jurisdiction over the non-resident spouse. *See Dawson–Austin v. Austin,* 968 S.W.2d 319,

324–25 (Tex.1998). Stated differently, a court may have jurisdiction to grant a divorce, which is an adjudication of the parties' status, but not have jurisdiction to divide their property, which is an adjudication of parties' rights. *Id.* at 324 (citing *Estin v. Estin*, 334 U.S. 541, 549, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561 (1948)). As one court explained, "Where the trial court in a divorce proceeding has no personal jurisdiction over the respondent, the trial court has the jurisdiction to grant the divorce, but not to . . . divide property outside the State of Texas. It may also lack jurisdiction to divide property within the state." *Hoffman v. Hoffman*, 821 S.W.2d 3, 5 (Tex.App.-Fort Worth 1992, no writ) (internal citations omitted).

In short, a claim for divorce and a claim for division of marital property are separate jurisdictional issues. *See id.; see also* TEX. FAM.CODE ANN. § 6.308(a) (Vernon Supp. 2009) ("A court in which a suit for dissolution of a marriage is filed may exercise its jurisdiction over those portions of the suit for which it has authority."). Here, Anna does not challenge the portion of the trial court's decree granting a divorce between her and Tony. Rather, she challenges only that portion of the decree relating to property division.

Second, the parties agree that the trial court lacked personal jurisdiction over Anna. Indeed, it is neither alleged nor shown that Anna ever lived in Texas, transacted any business in Texas, or participated in obtaining any property or assets in Texas. Nor is it alleged nor shown that Anna consented to or participated in Tony's transference of marital assets to Texas or in his acquisition of assets in Texas.

In his brief, Tony concedes the lack of in personam jurisdiction, but asserts that "personal jurisdiction over Anna was not necessary to obtain the relief ultimately granted in the [trial court's judgment]." He contends that the trial court was permitted to divide the marital estate "in absence of personal jurisdiction over Anna."

Third, the parties correctly agree that the Texas supreme court's opinion, *Dawson–Austin v. Austin*, 968 S.W.2d 319 (Tex.1998), guides the resolution of this issue. Thus, we turn to that case, and its underlying principles, to determine whether the trial court had jurisdiction to divide the marital estate in this case.

### C. Analysis

To understand its holding, it is helpful to lay out the background of *Dawson–Austin*. There, Austin ("Husband") started a business in Minnesota before his marriage to Dawson–Austin ("Wife"). *Id.* at 320. During the marriage, Husband's business substantially increased in value. *Id.* Husband and Wife lived in Minnesota for most of their marriage. *Id.* They also acquired property in other locations, including a home in California. *Id.* at 320–21.

After they separated, Husband moved to Texas, and Wife moved to California. *Id.* at 321. Six months after moving to Texas, Husband filed for divorce in Texas. *Id.* Wife filed a special appearance objecting to the Texas court's jurisdiction to divide the marital estate. *See id.* The record showed that Wife had never lived in Texas and had traveled to Texas only a few times on business. *Id.* The trial court overruled her special appearance, and the court of appeals affirmed. *Id.* Wife petitioned the Texas supreme court, which granted review.

Beginning its jurisdictional discussion, the Texas supreme court explained in *Dawson–Austin*, "The United States Constitution permits a state court to take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts

with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Id.* at 326 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996)).

The *Dawson–Austin* court made clear, however, that the lack of personal jurisdiction over Wife did not end the inquiry with regard to whether the trial court could divide marital property located in Texas. *See id.* at 327. "Even though the district court did not have in personam jurisdiction over [Wife], it is possible under the United States Constitution, and thus under Texas law, for the court to have had jurisdiction to divide the marital estate located in Texas." *Id.*

In *Dawson–Austin,* "[t]he property in Texas in which the parties claimed an interest was [Husband's] Dallas home and Texas bank accounts, which the parties agreed was community property, and the stock certificate evidencing [Husband's] shares in [his business]." *Id.* To determine whether the trial court had jurisdiction to divide this property, the *Dawson–Austin* court began by recognizing that, historically, "a state court could exercise jurisdiction over property within the state's borders and determine the rights and interests of non-residents." *Id.* (citing *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)). The court then explained that the United States Supreme Court abandoned this position in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *Id.* The *Shaffer* court held that jurisdiction over property "must be based on minimum, purposeful contacts and must not offend traditional notions of fair play and substantial justice." [2] *Id.* (citing *Shaffer,* 433 U.S. at 212, 97 S.Ct. at 2584).

In reaching this conclusion, the *Shaffer* court reasoned as follows:

> The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state-court jurisdiction that is fundamentally unfair to the defendant.
>
> We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.[3]

*Shaffer,* 433 U.S. at 212, 97 S.Ct. at 2584.

After its discussion of *Shaffer,* the *Dawson–Austin* court offered the following analysis of the facts before it:

---

**2.** The *Dawson–Austin* court succinctly summarized *Shaffer* as follows:

> *Shaffer* was a shareholder derivative suit against officers and directors of two Delaware corporations. A Delaware court sequestered defendants' stock in the corporations, even though neither defendants nor their stock were physically present in Delaware, basing its jurisdiction to do so on a Delaware statute that deemed Delaware the situs of ownership of all stock in Delaware corporations. The Supreme Court held that neither defendants nor their stock had sufficient contacts with Delaware to justify the state court's exercise of jurisdiction over them.

*Dawson–Austin v. Austin,* 968 S.W.2d 319, 327 (Tex.1998) (citing *Shaffer v. Heitner,* 433 U.S. 186, 192, 213–17, 97 S.Ct. 2569, 2573, 2584–2587, 53 L.Ed.2d 683 (1977)).

**3.** As observed by federal procedure commentators, Wright and Miller, "At a minimum, . . . it seems clear that [*Shaffer*] requires both state and federal courts to examine carefully any action based on quasi-in-rem jurisdiction to make certain that the minimum contacts and fair play and substantial justice standards established by the Supreme Court are met." 4A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1070 at 283–84 (3d ed. 2002).

[T]he location in Texas of property that either is or is claimed to be part of the marital estate does not supply the minimum contacts required for the court to exercise jurisdiction over [Wife]. [Husband] bought his Dallas home, opened his Texas bank accounts, and brought his [business's] stock certificate to Texas after he separated from [Wife]. We do not believe that one spouse may leave the other, move to another state in which neither has ever lived, buy a home or open a bank account or store a stock certificate there, and by those unilateral actions, and nothing more, compel the other spouse to litigate their divorce in the new domicile consistent with due process. One spouse cannot, solely by actions in which the other spouse is not involved, create the contacts between a state and the other spouse necessary for jurisdiction over a divorce action.

*Dawson–Austin*, 968 S.W.2d at 327 (citing *In the Interest of S.A.V.*, 837 S.W.2d 80, 83–84 (Tex.1992) (holding that without personal jurisdiction over one parent, a court could still decide custody of a child living in the State, but could not determine support and visitation)). The *Dawson–Austin* court continued, "Moreover, [Wife's] claim to a part of the value of the [ ] stock is completely unrelated to the situs of the certificate; rather, it is based on the parties' efforts to increase the value of [Husband's business], most of which occurred in Minnesota." *Id.*

The court concluded, "In no sense can it be said that [Wife] ever 'purposefully availed' herself of the privilege of owning property in this State." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528 (1985)). Hence, "the district court lacked jurisdiction to adjudicate [Wife's] claim to part of the value of the [business's] stock or to divide the marital estate." *Id.* at 328. The *Dawson–Austin* court ultimately held, "The district court had jurisdiction only to grant a divorce and not to determine the parties' property claims." *Id.*

■ Here, we begin by noting that Tony did not plead any jurisdictional facts with respect to Anna. Any property in Texas that is part of the marital estate in this case cannot, by itself, supply the requisite minimum contacts for the trial court to exercise personal jurisdiction over Anna or quasi in rem jurisdiction to adjudicate the parties' property interests. *See id.* at 327; *see also Shaffer*, 433 U.S. at 212–13, 97 S.Ct. at 2584.

There is no indication in the record that Anna consented to Tony's transference of property to Texas or participated in the acquisition of property in Texas. And, it appears undisputed that Anna has never resided in Texas, transacted any business in Texas, or had any meaningful contacts with Texas. As in *Dawson–Austin*, it is not consistent with the principles of due process in this case to permit Tony to force Anna to litigate their divorce in Texas solely by his unilateral actions of moving to Texas and acquiring property here.[4]

---

4. Tony points out this case is factually distinct from *Dawson–Austin* in several respects. Tony asserts that in *Dawson–Austin* the husband moved to Texas "for strategic divorce planning," a fact he avers is absent here. He points out that, unlike in *Dawson–Austin*, he believed that he and Anna had been divorced for the years they had been separated. While Tony's factual recitations may be correct, we do not find them significant to our minimum contacts analysis. Nor is there any indication that the facts Tony points to in *Dawson–Austin* were significant to that court's analysis. As discussed, the *Dawson–Austin* court focused on whether Wife had established minimum contacts in Texas and concluded that Husband's unilateral activities could not supply those contacts. *See Dawson–Austin*, 968

*See Dawson–Austin,* 968 S.W.2d at 327. Tony's conduct cannot create the requisite minimum contacts between Anna, Texas, the property, and the litigation necessary for the trial court to divide the marital estate. *See id.; see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

We recognize that, in his responsive brief, Tony presents argument to support the trial court's denial of Anna's special appearance. Tony points to language in *Shaffer,* the United States Supreme Court opinion on which the *Dawson–Austin* court relied. He contends that the following language in *Shaffer* indicates that a state court may divide the property of a person over whom the court lacks personal jurisdiction when that property is the subject matter of the underlying dispute:

> The case for applying to jurisdiction in rem the same test of "fair play and

substantial justice" as governs assertions of jurisdiction in personam is simple and straightforward. It is premised on recognition that "(t)he phrase, 'judicial jurisdiction over a thing,' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971) (hereafter Restatement). This recognition leads to the conclusion that in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*

This argument, of course, does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in

---

S.W.2d at 327. Tony also points out that the parties in *Dawson–Austin* had obvious alternative forums to litigate the property dispute. Tony contends that, here, the only other possible forums, such as California, Virginia, or federal court, lack a sufficient nexus to the dispute. He further asserts that forcing him to litigate in these forums is antithetical to the concept of "fair play and substantial justice." It is, however, not for us to determine whether these alternative forums are jurisdictionally appropriate. Nor are we faced with the argument that there is no other possible forum. *See Shaffer,* 433 U.S. at 211 n. 37, 97 S.Ct. at

2583 n. 37 ("This case does not raise, and we therefore do not consider, the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiff."); *see, e.g., Louring v. Kuwait Boulder Shipping Co.,* 455 F.Supp. 630, 633 (D.Conn.1977) (holding that Connecticut court could exercise quasi in rem jurisdiction because suit could not be brought in any other state). Thus, we are not persuaded by Tony's arguments distinguishing the facts of this case from those of *Dawson–Austin.*

the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State.... [5]

*Shaffer*, 433 U.S. at 207–08, 97 S.Ct. at 2581 (footnotes omitted). Relying on the *Shaffer* court's illustration, Tony asserts that, because the property of the marital estate is the "subject matter" of the dispute here, the trial court had the requisite in rem jurisdiction to make the property division.

We disagree with Tony's reading of *Shaffer*. Whether the litigation is a dispute over property located in the forum state is but one factor in the analysis. In a footnote to the above-quoted text, the Supreme Court made clear: "We do not suggest that these illustrations include all the factors that may affect the decision, nor that the factors we have mentioned are

necessarily decisive." *Id.* at 208 n. 28, 97 S.Ct. at 2581–82 n. 28.

In addition, the Supreme Court was careful to state that "the defendant's claim to property located in the State would *normally* indicate that he expected to benefit from the State's protection of his interest." *Id.* at 207–08, 97 S.Ct. at 2581 (emphasis added). In a footnote to this statement, the Supreme Court clarified, "In some circumstances the presence of property in the forum State will not support the inference suggested in the text." *Id.* at 207–08 n. 25, 97 S.Ct. at 2581 n. 25. Such circumstances were present in *Dawson–Austin* and are present here. *Dawson–Austin* and this case both involve a non-resident spouse with no past significant connections with Texas, who neither consented to, nor participated in, the transference or acquisition of the "subject" marital property in Texas.[6] This was the focus of the *Dawson–Austin* court's analysis when it determined that the trial court in that case lacked jurisdiction to divide the marital estate.[7] *See Dawson–Austin,* 968 S.W.2d at 327. And it is our focus here.

5. Tony further points to following observation by the *Dawson–Austin* court, "Even though the district court did not have in personam jurisdiction over Dawson–Austin, it is possible under the United States Constitution, and thus under Texas law, for the court to have had jurisdiction to divide the marital estate located in Texas." *Dawson–Austin,* 968 S.W.2d at 327.

6. We can envision a different result when a non-resident spouse participates in, or acquiesces to, the acquisition of property located in Texas. *See, e.g., Goodenbour v. Goodenbour,* 64 S.W.3d 69, 79 (Tex.App.-Austin 2001, pet. denied) (distinguishing *Dawson–Austin* on basis that nonresident spouse had participated in purchase of real property in Texas).

7. Tony points out that the Supreme Court of Georgia in *Abernathy v. Abernathy* determined that the trial court there had "full in rem"

jurisdiction to divide marital property located in Georgia, which was the subject of the litigation, solely on the basis that the nonresident spouse claimed an interest in the subject property. 267 Ga. 815, 818, 482 S.E.2d 265, 268 (1997). We believe that such approach is not consistent with the approach of our own supreme court in *Dawson–Austin. See* 968 S.W.2d at 327; *see also Shamley v. Shamley,* 117 N.C.App. 175, 179–82, 455 S.E.2d 435, 437–39 (1994) (holding that wife living in New Jersey did not have sufficient minimum contacts with North Carolina to be subject to jurisdiction of North Carolina court for purposes of husband's property division claim, when husband had purchased land and constructed a house in North Carolina without wife's participation, and her only voluntary contacts constituted two brief visits).

We, like the *Dawson–Austin* court, are also mindful that the *Shaffer* court instructed that "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*" *See Shaffer*, 433 U.S. at 207, 97 S.Ct. at 2581; *see also Dawson–Austin*, 968 S.W.2d at 327. The Supreme Court in *International Shoe* made clear that the constitutional touchstone of a due process inquiry is determining whether the defendant purposefully established minimum contacts in the forum state. *See Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. at 158; *see also Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183. As discussed *supra*, such minimum contacts are lacking in this case. The record before us does not demonstrate that Anna purposefully availed herself of the privilege of owning property in Texas. *See Dawson–Austin*, 968 S.W.2d at 327. There is no indication that Anna has purposefully availed herself of the benefits and protections of the laws of this state in order to protect her interest in the marital estate.[8] Accordingly, the trial court lacked the requisite jurisdiction to divide the marital property. *See id.* at 327–28.

We hold that the trial court erred when it denied Anna's special appearance challenging the trial court's jurisdiction to divide the marital estate.

We sustain Anna's first issue.[9]

## Conclusion

We reverse the portion of the trial court's Final Divorce Decree insofar as it divides the property of the marital estate, and we render the decree that the trial court should have rendered.[10] *See* Tex. R.App. P. 43.3.

---

8. Tony asserts that Anna has the required minimum contacts with Texas because she seeks to invoke the benefits and protections of Texas law by making a claim to the marital property located in Texas. To support this assertion, Tony invites us to review Anna's motion from new trial and her affidavit supporting the motion. Tony contends that, from statements made by Anna in those filings, we can presume and infer that Anna desires to pursue a claim against the marital property acquired by Tony in Texas. We disagree with Tony's logic. First, the subjunctive nature of Tony's argument highlights the present lack of Anna's minimum contacts with Texas. Second, it was Tony who chose Texas as the forum for this dispute, not Anna. Third, Anna filed her motion for new trial "subject to" her special appearance. Lastly, personal jurisdiction cannot be based on some possible, future conduct of a defendant.

9. Anna's second issue challenges the trial court's denial of her motion for new trial. We note that the prayer of Anna's brief requests this Court to reach her second issue "in the alternative" to her first issue. Because we have sustained Anna's first issue, we need not reach her second issue.

10. We reverse the portions of the decree pertaining to the trial court's division of the marital estate. As discussed, Anna and Tony do not challenge the portion of the trial court's decree ordering that they are divorced. We, therefore, neither affirm nor reverse that portion of the decree but render the decree that the trial court should have rendered, which includes a decretal provision ordering that Anna and Tony are divorced. *See* Tex.R.App. P. 43.3.