**Opinion issued June 20, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00705-CV**

———————————

**ERNEST THEOPHILUS QUIMBY IV, Appellant**

**V.**

**JESSICA YVETTE QUIMBY, Appellee**

---

**On Appeal from the County Court at Law No. 1**
**Galveston County, Texas**
**Trial Court Case No. 17FD3360**

---

## MEMORANDUM OPINION

In this suit for divorce, appellant, Ernest Theophilus Quimby IV, appeals the

trial court's orders granting the special appearance and motion to dismiss brought

by appellee, Jessica Yvette Quimby. In two issues, Ernest argues that the trial court

erred (1) in granting Jessica's special appearance, because she established minimum contacts with Texas and because the exercise of jurisdiction comports with fair play and substantial justice, and (2) in granting Jessica's motion to dismiss his suit, because the trial court had jurisdiction to grant a divorce.

We affirm.

## Background

Ernest and Jessica were married on August 24, 2009 in Washington State. Thereafter, they were stationed in various locations while both serving in the military. During their marriage, they had two children. On June 21, 2016, the couple separated. Ernest moved to the State of Mississippi, where he was stationed. Jessica left the military and moved, with their minor children, to the State of Florida to attend school. On December 22, 2017, Ernest filed the instant suit for divorce in Galveston County, Texas. On December 28, 2017, Jessica filed for legal separation in Clay County, Florida.

In his petition, Ernest alleged that, although he was serving in the military outside of the State of Texas, Texas had been his home state for at least six months and Galveston County had been his home county for at least 90 days. Ernest pled that Jessica could be served at an address in Fleming Island, Florida. He further pled that the children had not lived in Texas and were not under the continuing

2

jurisdiction of any court.[1]  Ernest asked the trial court to grant a divorce and divide the community property.  He further requested that he and Jessica be appointed as joint managing conservators of the children, with neither party having an exclusive right to designate the primary residence of the children, but with orders that the children not be moved out of "the State of Florida."  On January 5, 2018, Ernest served Jessica with process in Florida.

Jessica filed a special appearance in the instant suit, arguing that the Galveston County court lacked personal jurisdiction over her because she had lived in Florida continuously for greater than six months and thus she was a domiciliary of Florida. She further argued that the Galveston County court lacked jurisdiction over the children because they had never resided in Texas.  She asserted that, on December 28, 2017, she had filed an action for legal separation in Florida, "causing jurisdiction of this matter to fall in the State of Florida."

Subject to her special appearance, Jessica also filed a plea to the jurisdiction in the Galveston County court.  In her plea, she sought dismissal of Ernest's suit on the ground that, under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[2] the Texas court lacked subject-matter jurisdiction to make child

---

[1]    *See* TEX. FAM. CODE § 6.406(b) (providing that, if parties are parents of children and children are not under continuing jurisdiction of another court, suit for dissolution of marriage must include suit affecting parent-child relationship).

[2]    *See id.* §§ 152.001–.317.

3

custody determinations in this case. She asserted that the couple's last marital residence was in Washington State and that she and the children had never resided in Texas. In the alternative, she asked the trial court to decline its exercise of jurisdiction on the ground that Galveston County, Texas, was an inconvenient forum to make such determination and that Clay County, Florida, was a more appropriate forum.

The associate judge recommended to the referring court that Jessica's special appearance and plea to the jurisdiction be denied, and it issued a report as to conservatorship and support of the children and property division.

At a de novo hearing before the referring court, Ernest testified that Jessica had been to Texas one time, right after they got married, to meet his parents. He noted that, since that time, she had never been back to Texas. Jessica also testified that she had been to Texas one time. She testified that neither of her children had ever been to Texas. She noted that Ernest claimed Texas as his residence because he had enlisted in the military while in Texas.

On May 25, 2018, the trial court granted Jessica's special appearance and plea to the jurisdiction. On May 29, 2018, the trial court signed Temporary Orders adopting the associate judge's recommendations as to conservatorship and support of the children and a division of property. On June 5, 2018, Jessica filed a "Motion to Dismiss and Vacate Temporary Orders," asking the trial court to dismiss the case

based on its order granting her plea to the jurisdiction and to vacate its temporary orders. On June 8, 2018, the trial court granted the motion and dismissed the case.

## Special Appearance

In his second issue, Ernest argues that the trial court erred in granting Jessica's special appearance because Jessica "visited Texas in furtherance of the marital relationship and the exercise of jurisdiction would be reasonable."

A trial court's determination of a special appearance is subject to de novo review. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When, as here, the record includes the clerk's and reporter's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.*

When the petitioner in a suit for dissolution of a marriage is a resident or a domiciliary of this state at the time the suit for dissolution is filed, the court "may exercise personal jurisdiction over the respondent" if:

(1)     this state is the last marital residence of the petitioner and the respondent and the suit is filed before the second anniversary of the date on which marital residence ended; or

(2)     there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.

TEX. FAM. CODE § 6.305(a).

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945); *BMC Software Belg.*, 83 S.W.3d at 795. A nonresident defendant who has "purposefully availed" herself of the benefits and protections of a foreign jurisdiction's laws has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *BMC Software Belg.*, 83 S.W.3d at 795. Thus, only the defendant's contacts with the forum count: "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). A "defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. Further, although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has

purposefully established "minimum contacts" with the forum state. *BMC Software Belg.*, 83 S.W.3d at 795. A defendant should not be subject to a foreign court's jurisdiction based upon "random, isolated, or fortuitous" contacts. *Michiana*, 168 S.W.3d at 785.

Once a nonresident has purposefully established minimum contacts with the forum state, "[o]nly in rare cases" will the exercise of jurisdiction fail to comport with fair play and substantial justice. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). We look to the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*. at 228.

Here, it is undisputed that Jessica has never been a Texas resident. *See* TEX. FAM. CODE § 6.305(a)(1) (providing trial court may exercise personal jurisdiction over respondent if Texas is last marital residence). Ernest argues that there exists a constitutional basis for the exercise of personal jurisdiction over Jessica because "she traveled to Texas in furtherance of the marital relationship and suit in Texas was foreseeable." *See id.* § 6.305(a)(2).

At a hearing on Jessica's special appearance, Ernest testified that Jessica had been to Texas one time, right after they got married, to meet his parents. And, since that time, she had never been back to Texas. Jessica also testified that she had been to Texas one time. No other evidence of contacts was presented. A defendant should not be subject to a foreign court's jurisdiction based upon "random, isolated, or fortuitous" contacts. *Michiana*, 168 S.W.3d at 785. We conclude that Jessica having simply visited Texas one time, without more, does not constitute purposeful availment of the benefits and protections of the laws of the State of Texas sufficient to confer personal jurisdiction. *See Burger King*, 471 U.S. at 474–76; *BMC Software Belg.*, 83 S.W.3d at 795. In sum, there was no basis under either prong of section 6.305 for the trial court to exercise personal jurisdiction over Jessica. *See* TEX. FAM. CODE § 6.305(a)(1)–(2); *Burger King*, 471 U.S. at 474–76; *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326–27 (Tex. 1998).

On appeal, Ernest asserts that Jessica should have anticipated being haled into a Texas court because he, having enlisted in the military in Texas, maintained his Texas residency throughout their marriage. However, only the defendant's contacts with the forum count: "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475; *Michiana*, 168 S.W.3d at 785. "One spouse cannot, solely by actions in which the other spouse

is not involved, create the contacts between a state and the other spouse necessary for jurisdiction over a divorce action." *Dawson-Austin*, 968 S.W.2d at 327.

Because there was no basis for the trial court to exercise personal jurisdiction over Jessica, the trial court did not err in granting her special appearance. Accordingly, we overrule Ernest's second issue.

### Dismissal[3]

In his first issue, Ernest argues that the trial court erred in dismissing his suit in its entirety because he met the domiciliary and residency requirements to maintain his suit. *See* TEX. FAM. CODE § 6.301. He asserts that, even if the trial court lacked personal jurisdiction over Jessica, he was entitled to a divorce.

Under the Family Code, "[a] suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been":

(1)     a domiciliary of this state for the preceding six-month period; and

(2)     a resident of the county in which the suit is filed for the preceding 90-day period.

*Id.* "Although section 6.301 is not itself jurisdictional, it is akin to a jurisdictional provision because it controls a party's right to maintain suit for divorce and is a

---

[3]     As discussed below, Ernest does not challenge the trial court's ruling on Jessica's plea to the jurisdiction. He argues, rather, that the trial court, in dismissing his SAPCR based on the plea to the jurisdiction, erred by also dismissing his request for a divorce.

mandatory requirement that cannot be waived." *In re Green*, 385 S.W.3d 665, 668 (Tex. App.—San Antonio 2012, orig. proceeding); *see In re Milton*, 420 S.W.3d 245, 252 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (citing *Stallworth v. Stallworth*, 201 S.W.3d 338, 345 (Tex. App.—Dallas 2006, no pet.) ("These provisions are not jurisdictional, but rather provide the necessary qualifications for bringing an action for divorce.")). "A soldier's domicile remains the same as when he or she entered the service, unless proof of clear and unequivocal intention to change domicile is shown." *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 849 n.17 (Tex. 2000). "Time spent by a Texas domiciliary outside this state or outside the county of residence of the domiciliary while in the service of the armed forces or other service of the United States or of this state . . . is considered [in] residence in this state and in that county." TEX. FAM. CODE § 6.303.

Here, it is undisputed that Ernest enlisted in the military in Texas. *See Torrington,* 46 S.W.3d 829, 849 n.17. In his petition for divorce in the Galveston County court, Ernest pled that he was serving in the armed forces outside of the State of Texas, but that Texas was his home state, and had been for at least six months, and that Galveston County had been his home county for at least 90 days. *See* TEX. FAM. CODE §§ 6.301, 6.303. Thus, the record shows that Ernest satisfied the mandatory requirements of section 6.301 at the time he sued for divorce. *See id.* § 6.301; *Torrington*, 46 S.W.3d at 849 n.17.

10

It is well-established that a trial court may grant a Texas resident a divorce, even though, as we concluded above, it lacks personal jurisdiction over the non-resident spouse. *See Dawson–Austin*, 968 S.W.2d at 324–25. "A court in which a suit for dissolution of a marriage is filed ***may*** exercise its jurisdiction over those portions of the suit for which it has authority." TEX. FAM. CODE § 6.308(a) ("Exercising Partial Jurisdiction") (emphasis added). The use of the term "may" indicates that the statute is not mandatory, but discretionary. *See* TEX. GOV'T CODE § 311.016(1) ("'May' creates a discretionary authority or grants permission or a power."); *Willig v. Diaz*, No. 01-15-00073-CV, 2016 WL 2955395, at *5 (Tex. App.—Houston [1st Dist.] May 19, 2016, no pet.) (mem. op.); *Boots v. Lopez*, 6 S.W.3d 292, 294 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding language of section 6.308 is discretionary, not mandatory and, therefore, it is within trial court's discretion whether to exercise partial jurisdiction over case). To establish that a trial court abused its discretion in exercising, or declining to exercise, its partial jurisdiction, an appellant must show that the trial court acted without reference to guiding rules and principles or in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Family Code section 6.308(b) provides that a trial court's authority to resolve the issues in controversy between the parties may be restricted because the court lacks: (1) the required personal jurisdiction over a nonresident party in a suit for

11

dissolution of the marriage; (2) the required jurisdiction under Family Code Chapter 152 (UCCJEA), governing child custody matters; or (3) the required jurisdiction under Family Code Chapter 159 ("Uniform Interstate Family Support Act"), governing certain child support orders. TEX. FAM. CODE § 6.308(b). Thus, a trial court may have jurisdiction to grant a divorce, which is an adjudication of the parties' status, but lack jurisdiction to divide their property, which is an adjudication of the parties' rights. *Dawson–Austin*, 968 S.W.2d at 324; *see Mason v. Mason*, 321 S.W.3d 178, 181 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding claim for divorce and claim for division of marital property are separate jurisdictional issues and, when trial court lacks personal jurisdiction over respondent, "the trial court has the jurisdiction to grant the divorce, but not to . . . divide property outside the State of Texas. It may also lack jurisdiction to divide property within the state."). Further, a trial court may have jurisdiction to grant a divorce, but lack jurisdiction to make an initial child custody determination. *See In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012); *Seligman–Hargis v. Hargis*, 186 S.W.3d 582, 586 (Tex. App.—Dallas 2006, no pet.) (holding that section 6.308 "establishes that the legislature specifically contemplated that a court might have jurisdiction over a divorce, but not a child custody determination"); *Barajas v. Santiago*, No. 01-10-00914-CV, 2012 WL 760921, at *4 n.4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, no pet.) (mem. op.)

(recognizing that trial court had discretion to consider divorce portion of case even though it lacked subject matter jurisdiction over child custody determination).

Here, because the trial court lacked personal jurisdiction over Jessica, as discussed above, the trial court lacked jurisdiction to divide the parties' property. *See Dawson–Austin*, 968 S.W.2d at 324; *Mason*, 321 S.W.3d at 181.

Further, the trial court determined that it lacked jurisdiction to make an initial child custody determination.[4] Section 152.201(a) of the UCCJEA governs jurisdiction over child custody issues between Texas and other states. *Lesem v. Mouradian*, 445 S.W.3d 366, 372 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see* TEX. FAM. CODE § 152.201(b) (providing that section 152.201(a) is "the exclusive jurisdictional basis for making a child custody determination by a court of this state."); *Graebener v. Graebener*, No. 01-11-00331-CV, 2012 WL 1143590, at *3 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (mem. op.) ("Subject-matter

---

[4] The record shows that the trial court granted Jessica's plea to the jurisdiction, in which she asserted that the trial court lacked subject-matter jurisdiction under the UCCJEA to make custody determinations regarding the children. Ernest does not challenge the trial court's ruling on the plea to the jurisdiction. Although he, in the "Prayer" portion of his brief, asks this Court to reverse the trial court's order granting Jessica's plea to the jurisdiction, he does not provide any substantive analysis challenging the ruling or cite to or discuss the UCCJEA, or Family Code Chapter 152. Thus, any such challenge is waived. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

jurisdiction of child custody disputes is determined by the UCCJEA"). Under section 152.201(a), a Texas court has jurisdiction to make an initial custody determination only if Texas is the "home state" of the child; a court of the home state of the child has declined to exercise jurisdiction "*on the ground that* this state is the more appropriate forum under Section 152.207 or 152.208"; or a court of another state does not have jurisdiction. *See* TEX. FAM. CODE § 152.201(a) (emphasis added). "Home state" means the state in which a child lived with a parent or person acting as a parent for at least six consecutive months before commencement of a child custody proceeding. *Id.* § 152.102(7). The record shows, and it is undisputed, that Jessica and the children live in Florida and have never lived in Texas. Thus, Texas is not the children's "home state." *See id.* §§ 152.201(a)(1), 152.102(7). The record does not show, and Ernest does not assert a challenge to, any of the other bases for jurisdiction under the UCCJEA. *See Dillard Tex. Operating Ltd. P'ship v. City of Mesquite*, 168 S.W.3d 211, 214 (Tex. App.—Dallas 2005, pet. denied) (noting that party seeking to invoke trial court's jurisdiction bears burden of alleging facts that affirmatively demonstrate court's authority to hear case).

In sum, because the trial court lacked jurisdiction to divide property and to make initial child custody determinations in this case, it was within the trial court's discretion whether to exercise partial jurisdiction over Ernest's suit for divorce. *See* TEX. FAM. CODE § 6.308(a) (providing that court in which a suit for dissolution of

14

marriage is filed "may" exercise its jurisdiction over those portions of suit for which it has authority); *Okonkwo v. Okonkwo*, 365 S.W.3d 801, 804 (Tex. App.—San Antonio 2012, no pet.) (holding that trial court lacking jurisdiction over child custody issues not required to retain jurisdiction of divorce); *Boots*, 6 S.W.3d at 294 (holding trial court had discretion whether to assume jurisdiction over those portions of suit over which it had authority).

Ernest argues that the trial court erred in not exercising jurisdiction over his divorce action because he filed his petition in Texas prior to Jessica filing her petition in Florida.[5] Whether the Texas divorce action was filed first does not bear on determining jurisdiction over custody matters, as "the two proceedings involve different inquiries." *See In re Dean*, 393 S.W.3d at 747 (citing *Seligman–Hargis*, 186 S.W.3d at 586 (holding that trial court's jurisdiction to hear divorce action did not automatically give it authority to decide child custody issues as well)). Jurisdiction over custody determinations is governed by the UCCJEA, regardless of whether there exists an ongoing divorce. *See id.*

---

[5] Ernest directs this Court to materials attached to his brief regarding the Florida proceedings. We may not consider documents attached to briefs that are not on file and part of the appellate record before us. *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *Till v. Thomas*, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (stating documents attached to brief and not appearing in appellate record cannot be considered). We must hear and determine a case on the record filed. *See Till*, 10 S.W.3d at 733.

Ernest does not direct us to any authority for the proposition that the trial court was *required* to exercise its partial jurisdiction over this case. We conclude that the trial court acted within its discretion in declining to exercise jurisdiction over the divorce. *See Dawson*, 2002 WL 34231215, at *3 (holding that trial court did not abuse its discretion in not exercising partial jurisdiction); *see also Boots*, 6 S.W.3d at 294 ("To require the parties to litigate two cases in two states involving similar subject matter would not be in the interest of judicial economy.").

We overrule Ernest's first issue.

## Conclusion

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.